# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| TR CONSTRUCTION, INC., | CASE NO.   5:21-CV-1109-JRA |
| Plaintiff, | JUDGE JOHN R. ADAMS |
| v. | |
| SUMMIT COUNTY, OHIO, | **DEFENDANT'S MOTION FOR SUMMARY JUDGMENT** |
| Defendant. | |

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, Defendant Summit County, Ohio hereby moves for summary judgment on all claims set forth in the Plaintiff's Amended Complaint.  A Memorandum in Support of this Motion for Summary Judgment, along with the supporting summary judgment exhibits, are attached hereto for the Court's review and consideration.

Respectfully submitted,

/s/  Stephen W. Funk
Stephen W. Funk (0058506)
Grant McLeod (0100244)
Roetzel & Andress, LPA
222 South Main Street
Akron, OH 44308
Telephone:  (330) 376-2700
E-mail:  sfunk@ralaw.com;
gmcleod@ralaw.com

*Attorneys for Defendant Summit County, Ohio*

## TABLE OF CONTENTS

Page

SUMMARY OF ARGUMENT AND STATEMENT OF ISSUES ................................................... 1

STATEMENT OF FACTS ........................................................................................................... 2

    A.    Statutory Background ........................................................................................... 2

    B.    The Underlying Tax Foreclosure Action .................................................................. 5

ARGUMENT ............................................................................................................................... 8

I.    THE COURT SHOULD GRANT SUMMARY JUDGMENT IN SUMMIT COUNTY'S FAVOR ON PLAINTIFF'S DUE PROCESS CLAIM ................................... 8

    A.    The Service Provided By The Clerk of Courts In Tax Foreclosure Action Satisfies Constitutional Due Process Requirements .................................... 8

    B.    TR Construction's Due Process Claim Is Barred By Res Judicata ....................... 11

    C.    The Court Lacks Jurisdiction Over TR Construction's Due Process Claim Under The Tax Injunction Act And Related Doctrine of Comity ............................................................................................................... 14

II.    THE COURT SHOULD GRANT SUMMARY JUDGMENT IN SUMMIT COUNTY'S FAVOR ON PLAINTIFF'S FEDERAL LAW TAKINGS CLAIM ............ 16

III.    THE COURT SHOULD GRANT SUMMARY JUDGMENT IN SUMMIT COUNTY'S FAVOR ON PLAINTIFF'S STATE LAW TAKINGS CLAIM ................. 19

IV.    SUMMIT COUNTY ALSO IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THE BOARD OF REVISION WAS ACTING AS THE STATE'S AGENT, NOT THE COUNTY'S AGENT, IN ENFORCING OHIO'S TAX FORECLOSURE LAWS ............................................................................................... 19

CONCLUSION .......................................................................................................................... 20

CERTIFICATE OF COMPLIANCE

CERTIFICATE OF SERVICE

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Akey v. Clinton Cty.*, 375 F.3d 231 (2d Cir. 2004) ...................................................................9

*Armendariz-Matta v. U.S. Dept. of Justice*, 82 F.3d 679 (5th Cir. 1996) ......................................10

*Bear v. Delaware Cty.*, 2014 WL 6808981 (S.D. Ohio 2014)...........................................................13

*Beaver Excavating Co. v. Testa*, 134 Ohio St.3d 565, 2012-Ohio-5776, 983 N.E.2d 1317...........2

*Bennis v. Michigan*, 516 U.S. 442, 116 S.Ct. 994, 134 L.Ed.2d 68 (1996)...................................16

*Bowers v. Craven*, 9th Dist. Summit No. 24422, 2009-Ohio-2222.....................................................9

*Cady v. Arenac Co.*, 574 F.3d 334 (6th Cir. 2009).........................................................................20

*Card v. Cleveland*, 2019 WL 4600434, *4 (N.D. Ohio 2019)..........................................................13

*Carroll v. Cleveland*, 522 F. App'x 299 (6th Cir. 2013).............................................11, 12, 13, 14

*Cincinnati Sch. Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision*, 87 Ohio St.3d 363,
    721 N.E.2d 40 (2000)...............................................................................................................14

*Cleveland v. Martin*, 8th Dist. Cuyahoga No. 85374, 2005-Ohio-6482 ........................................19

*DiPiero v. City of Macedonia*, 180 F.3d 770 (6th Cir. 1999) ...........................................................9

*Dixon v. Oisten*, 62 F. App'x 105 (6th Cir.2003)............................................................................14

*Epice Corp. v. Land Reutilization Authority of City of St. Louis*, No. 4:07Cv00206 HEA,
    2010 WL 3270114 (E.D. Mo. Aug. 17, 2012) .......................................................................16

*Foor v. Cleveland*, 2013 WL 4427432 (N.D. Ohio 2013) ...............................................................13

*Freed v. Thomas*, 976 F.3d 729 (6th Cir. 2020) .............................................................................15

*Freeman v. Shaker Hts. City Schools*, 2014 WL 4064330 (N.D. Ohio 2014)................................13

*Gardner v. St. Clair Co.*, No. 2:16-CV-10198, 2016 WL 894628 (E.D. Mich. Mar. 9,
    2016) .........................................................................................................................................20

*Golden v. Mercer Cty. Tax Claim Bureau (In re Golden)*, 190 B.R. 52 (Bankr. W.D.
    Penn. 1995)...............................................................................................................................16

*Goodwin v. County of Summit*, 2016 WL 5118310 (N.D. Ohio 2016)...........................................13

*Goodwin v. Summit Cty.*, 703 F. App'x 379 (6th Cir. 2017) ...........................................11

*Groveport Madison Local Schools Bd. of Edn. v. Franklin Cty. Bd. of Rev.*, 149 Ohio St.3d 706, 2017-Ohio-1428, 77 N.E.3d 957 ..............................................................6

*Hall v. Meisner*, 51 F.4th 185 (6th Cir. 2022) ..................................................................18

*Harrison v. Montgomery County*, 997 F.3d 643 (6th Cir. 2021) ....................... 13, 14, 15

*Harrison v. Montgomery County*, 482 F. Supp. 3d 652 (S.D. Ohio 2020) .......................19

*Hitachi Medical Systems America, Inc. v. Philbrick*, No. 5:09CV1187, 2011 WL 841183 (N.D. Ohio Mar. 7, 2011) .......................................................................................9

*Hometown Village of Marion Assn. v. Marion Twp.*, 547 F. Supp. 3d 672 (E.D. Mich. July 1, 2021) ...........................................................................................................15

*In re Foreclosure of Liens for Delinquent Taxes*, 62 Ohio St.2d 333, 405 N.E.2d 1030 (1980) .....................................................................................................................12

*Johnson v. Mich. Dep't of Treasury*, 211 F.3d 1269 (Table), 2000 WL 571916 (6th Cir. May 4, 2000) ...................................................................................... 14, 15

*Johnson v. Sawyer*, No. 15-3972, slip op. (6th Cir. Apr. 6, 2016) ..................................15

*Johnson v. Sawyer*, No. 1:15 CV 0730, 2015 WL 4743815 (N.D. Ohio Aug. 11, 2015) .............14

*Jones v. Flowers*, 547 U.S. 220, 126 S.Ct. 1708 (2006) ...................................... 9, 10, 11

*Knick v. Twp. of Scott*, --- U.S. ----, 139 S. Ct. 2162, 204 L.Ed.2d 558 (2019) ...........................14

*Leasor v. Kapszukiewicz*, 6th Dist. Lucas No. L-08-1004, 2008-Ohio-6176 ...............16

*Leber v. United States*, 146 Fed. Cl. 9 (Ct. Cl. 2019) ....................................................16

*Leslie v. Lacy*, 91 F. Supp. 2d 1182 (S.D. Ohio 2000) ..................................................20

*Lifter v. Cleveland State Univ.*, 202 F. Supp. 3d 779 (N.D. Ohio 2016) .......................13

*Lisboa v. Cleveland Heights*, 576 F. App'x 474 (6th Cir. 2014) ....................................11

*Moore v. Hiram Twp. Ohio*, 988 F.3d 353 (6th Cir. 2021) ...................................... 11, 13

*Moore v. Hiram Twp.*, 2020 WL 511264 (N.D. Ohio 2020) ..........................................13

*Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 70 S.Ct. 652 (1950) .........................9

*Nelson v. City of New York*, 352 U.S. 103 (1956) .........................................................17

*NOCO Company v. Shelton*, No. 1:19-cv-2553, 2021 WL 4699215 (N.D. Ohio
  Jan. 8, 2021)...........................................................................................................10

*Northwest Airlines, Inc. v. Tenn. State Bd. of Equalization*, 11 F.3d 70 (6th Cir. 1993)...............15

*Ondo v. Cleveland*, 2013 WL 6089475 (N.D. Ohio 2013) ............................................................13

*Pusey v. City of Youngstown*, 11 F.3d 652 (6th Cir. 1993)......................................................20

*Raquet v. Wade*, 4 Ohio 107 (1829) ............................................................................................2

*Scarborough v. Gibson*, 13 Ohio Dec. 738 (1903), *aff'd*, 69 Ohio St. 578,
  70 N.E. 1130 (1904).......................................................................................... 2, 18, 20

*Shankle v. Egner*, 5th Dist. Stark Nos. 2011 CA 00121, 2011 CA 00143,
  2012-Ohio-2027 ...............................................................................................................9

*Snider Intern. Corp. v. Town of Forest Heights, Md.*, 739 F.3d 140 (4th Cir. 2014)................9, 11

*Speed v. Mills*, 919 F. Supp. 2d 122 (D.D.C. 2013)........................................................................16

*State ex rel. Bingham v. Riley*, 6 Ohio St.2d 263, 217 N.E.2d 874 (1966)....................................12

*State ex rel. Casale v. McLean*, 58 Ohio St. 3d 163, 569 N.E.2d 475 (1991) ..............................12

*State ex rel. Cuyahoga Lakefront Land, L.L.C. v. Cleveland*, 148 Ohio St.3d 531, 2016-
  Ohio-7640, 71 N.E.3d 1016................................................................................................19

*State ex rel. Henderson v. Maple Hts. Civil Service Comm.*, 63 Ohio St.2d 39, 406 N.E.2d
  1105 (1980)........................................................................................................................12

*Talismanic Properties LLC v. Tipp City Ohio*, 742 F. App'x 129 (6th Cir. 2018) .......................11

*Tarrify Properties v. Cuyahoga Cty.*, 1:19-cv-2293, 2021 WL 164217 (N.D. Ohio Jan.
  19, 2021)............................................................................................................................17

*Tarrify Properties, LLC v. Cuyahoga Cty.*, No. 1:19-CV-2293, 2020 WL 4043105
  (N.D. Ohio July 17, 2020) ................................................................................ 17, 18, 19

*Texaco, Inc. v. Short*, 454 U.S. 516 (1982)..................................................................................17

*Trask v. McCarthy*, 2016 WL 4449640 (S.D. Ohio 2016)............................................................13

*United States ex rel. Arnold v. Alphatec Spine, Inc.*, Case No. 1:13-cv-586, 2016 WL
  11800669 (S.D. Ohio May 6, 2016)....................................................................................10

*Wade v. Cleveland*, 8 Ohio App.3d 176, 456 N.E.2d 829 (8th Dist. 1982)...................................12

*Wylie-Brown v. O'Leary*, 2018 WL 3135942 (N.D. Ohio 2018) ..................................................13

**Statutes**

42 U.S.C. § 1983 ............................................................................................. 1, *passim*

Ohio Revised Code Chapter 2505 ...................................................................5

Ohio Revised Code Chapter 2506 .......................................................... 5, 12, 13

Ohio Revised Code Chapter 323 .................................................................2, 18

Ohio Revised Code Section 323.31 ...............................................................4

Ohio Revised Code Section 323.65 .............................................................3, 4

Ohio Revised Code Section 323.66 ...........................................................4, 18

Ohio Revised Code Section 323.69 ...............................................................5

Ohio Revised Code Section 323.691 ..............................................................5

Ohio Revised Code Section 323.70 ...............................................................5

Ohio Revised Code Section 323.72 ...............................................................4

Ohio Revised Code Section 323.78 ..................................................... 3, *passim*

Ohio Revised Code Section 323.79 ..................................................... 1, *passim*

Ohio Revised Code Section 5715.11 .............................................................18

Ohio Revised Code Section 5721.25 ..............................................................4

**Constitutional Provisions**

Ohio Constitution, Article I, Section 19 .................................................. 1, 2, 19

Ohio Constitution, Article II, Section 1 ................................................. 2, 3, 18

**Rules**

Ohio Rules of Civil Procedure, Rule 4.4 ........................................................10

Ohio Rules of Civil Procedure, Rule 4.6 ..........................................................9

## INDEX OF EXHIBITS

| Doc. # | Description |
|---|---|
| 45-1 | Declaration of Raymond Hartsough |
| 45-2 | Hartsough Decl. Ex. A – Certified Copy of Docket in Tax Foreclosure Action |
| 45-3 | Hartsough Decl. Ex. B – Certified Copy of Certified Mail Receipt in Tax Foreclosure Action for 152 W. Dartmore Ave. |
| 45-4 | Hartsough Decl. Ex. C – Certified Copy of Certified Mail Receipt in Tax Foreclosure Action for 720 Mohawk Trail, SW |
| 45-5 | Hartsough Decl. Ex. D – Certified Copy of Certified Mail Receipt in Tax Foreclosure Action for 1007 Bank Street |
| 45-6 | Hartsough Decl. Ex. E – Certified Copy of Certificate of Mailing in Tax Foreclosure Action for 152 W. Dartmore Ave. |
| 45-7 | Hartsough Decl. Ex. F – Certified Copy of Certificate of Mailing in Tax Foreclosure Action for 720 Mohawk Trail, SW |
| 45-8 | Hartsough Decl. Ex. G – Certified Copy of Certificate of Mailing in Tax Foreclosure Action for 1007 Bank Street |
| 45-9 | Certified Copy of Adjudication of Foreclosure in Tax Foreclosure Action |
| 45-10 | Certified Copy of Affidavit for Service By Publication |
| 45-11 | Certified Copy of Proof of Publication in Tax Foreclosure Action |
| 45-12 | Excerpts from Rule 30(b)(6) Deposition of Joe Stephen Riley, Jr. |
| 45-13 | Plaintiff's Answers to Defendant's First Set of Interrogatories and Request for Admissions |
| 45-14 | Declaration of Gus Frangos |
| 45-15 | Sixth Circuit's Opinion in *Johnson v. Sawyer*, Case No. 15-3972 (Apr. 6, 2016) |

## SUMMARY OF ARGUMENT AND STATEMENT OF ISSUES

This case involves an attempt by a delinquent taxpayer to obtain a financial windfall at the expense of Summit County's law-abiding taxpayers. Plaintiff TR Construction, Inc. ("Plaintiff" or TR Construction") admits that it did not pay any property taxes for over ten years (from January 2009 through July 2019), and that there was over $313,698.50 in delinquent taxes owed for the property located at 1007 Bank Street, Akron, Ohio 44305 (the "Property") when it was foreclosed upon by the Summit County Board of Revision (the "Board") on June 3, 2019. (Doc.#9, Amd. Compl. ¶ 22, PageID#189); (Doc. #45-13, Def. Answer to Request for Admission No. 5, PageID#626). Indeed, under Ohio law, a property owner loses its ownership of a tax-foreclosed property once it has been foreclosed upon in accordance with Ohio's tax collection statutes. Yet, even though TR Construction admits that there were over $316,000 in total impositions owed when it lost ownership of the Property, it now wants the taxpayers of Summit County to pay over $600,000 in damages for the alleged "taking" of this tax-foreclosed property.

In its Amended Complaint, Plaintiff alleges three claims: (1) a due process claim for the alleged failure to serve the Summons and Complaint in the underlying Tax Foreclosure Action; (2) a federal takings claim under 42 U.S.C. § 1983; and (3) a state law takings claim under Article I, Section 19 of the Ohio Constitution. As set forth below, however, Summit County is entitled to summary judgment in its favor on each claim for the following reasons:

(1)     The due process claim must fail because the undisputed evidence in the record demonstrates that proper service was effectuated in the Tax Foreclosure Action by ordinary mail and by publication;

(2)     The due process claim is barred by res judicata because it could have been raised in a timely administrative appeal from the Board's tax foreclosure order under R.C. § 323.79;

(3)     The due process claim is barred by the Tax Injunction Act and related doctrine of comity.

1

(4)     The federal takings claim must fail because the underlying judgment in the Tax Foreclosure Action was based upon the failure to pay taxes, and thus the Board's direct transfer order involved the exercise of the State's taxing power, not the power of eminent domain.

(5)     The state law takings claim must be dismissed because it is well-established that the remedy for a takings claim under Article I, Section 19 of the Ohio Constitution is the filing of a petition for writ of mandamus, not a direct claim for money damages.

Finally, Summit County is entitled to summary judgment in its favor because it is undisputed that the alleged injury arose from a final judgment of the Summit County Board of Revision, which is creature of statute that has been established by the Ohio General Assembly, and thus was acting as the State's agent in enforcing Ohio's tax collection laws.   Accordingly, for all of these reasons, the Court should grant summary judgment in Summit County's favor on all claims.

## STATEMENT OF FACTS

### A.     Statutory Background

It is well established that the power of taxation is indispensable to the existence of the State of Ohio, as being necessary for the funding of all aspects of governmental operations. *Raquet v. Wade*, 4 Ohio 107 (1829).  The taxing power is an exercise of the sovereignty of the State through its General Assembly. *Scarborough v. Gibson*, 13 Ohio Dec. 738, 740 (1903), *aff'd*, 69 Ohio St. 578, 70 N.E. 1130 (1904).  Indeed, as the Ohio Supreme Court has explained, "the power to tax lies exclusively with the General Assembly pursuant to the general legislative grant conferred by the Ohio Constitution, Article II, Section 1." *Beaver Excavating Co. v. Testa*, 134 Ohio St.3d 565, 2012-Ohio-5776, 983 N.E.2d 1317, ¶ 40.  Pursuant to the constitutional authority granted to Ohio's legislative branch, therefore, the General Assembly has adopted a comprehensive statutory scheme for the collection of property taxes and the enforcement of the State's tax liens that is set forth in Chapter 323 of the Ohio Revised Code.  (*See* Ohio Revised Code "Chapter 323:  COLLECTION OF TAXES").

2

In accordance with its constitutional authority under Article II, Section 1 of the Ohio Constitution, the General Assembly sought to strengthen Ohio's tax foreclosure laws in 2006 by adopting an expedited tax foreclosure procedure for vacant and abandoned lands that is codified in R.C. 323.65 to R.C. 323.79.  (Doc.#45-14, Declaration of Gus Frangos, ¶ 4-5, PageID#640). Under the operative statutes, where a tax delinquent property involves "abandoned" land, as defined by R.C. 323.65(A), a tax foreclosure proceeding may be filed with the board of revision, which, upon "adjudication of foreclosure," may order a sale by public auction or transfer the property to an "electing subdivision" under R.C. 323.78(B), which provides:

> . . . upon adjudication of foreclosure of the parcel, the court or board of revision shall order, in the decree of foreclosure or by separate order, that the equity of redemption and any statutory or common law right of redemption in the parcel by its owner shall be forever terminated after the expiration of the alternative redemption period and that the parcel shall be transferred by deed directly to the requesting municipal corporation, township, county, school district, community development corporation, or county land reutilization corporation without appraisal and without a sale, free and clear of all impositions and any other liens on the property, which shall be deemed forever satisfied and discharged. The court or board of revision shall order such a transfer regardless of whether the value of the taxes, assessments, penalties, interest, and other charges due on the parcel, and the costs of the action, exceed the fair market value of the parcel. No further act of confirmation or other order shall be required for such a transfer, or for the extinguishment of any statutory or common law right of redemption.

*See* Ohio Rev. Code § 323.78(B).

As set forth in the Declaration of Gus Frangos who worked with Ohio's Legislative Services Commission in the drafting of R.C. 323.65 to R.C. 323.79, the General Assembly adopted the expedited foreclosure procedures in R.C. 323.65 to R.C. 323.79 in order to redress the unique tax collection problem created by vacant and abandoned lands where the property owners are less likely to pay taxes. and the abandoned properties are significantly less likely to be sold at a sheriff's auction due to the lack of a minimum bid.  (Doc.#45-14, Frangos Decl. ¶ 5, PageID#640).  As a result, most of the vacant, abandoned lands were being subject to forfeiture

3

by the State, and were often becoming subject to tax foreclosure proceedings again and again, resulting in a never-ending cycle of tax foreclosure proceedings that does not result in the payment of any taxes.  (*Id.*).  Thus, the expedited foreclosure procedures adopted by the General Assembly included a statutory provision in R.C. 323.78 that provided for the transfer of a tax delinquent property as an alternative remedy to sale or forfeiture.  (*Id.*)

In this regard, it is important to emphasize that a direct transfer can be ordered *only if* a property owner fails to pay its property taxes in accordance with Ohio's tax laws.  (Doc.#45-14, Frangos Decl. ¶ 4, PageID#640).   Under R.C. 323.72, in fact, the owner or other interested parties have the <u>unilateral</u> and <u>unconditional</u> right to terminate a tax foreclosure proceeding at any time by paying all outstanding taxes, or by showing that the impositions have been paid. R.C. 323.72(A)(2) and R.C. 323.72(B).  Moreover, R.C. 323.31 and R.C. 5721.25 provide that a property owner may enter into a tax delinquent installment contract to pay their taxes over time. Indeed, even if the Board issues a final order of foreclosure that provides for the direct transfer of a property to an electing subdivision under R.C. 323.78, Ohio's tax laws provide that the property owner shall be granted an additional 28-day "alternative redemption period" to redeem their interest in the property by paying the impositions owed.  R.C. 323.65(J); R.C. 323.78(B). Thus, the statutory scheme adopted by the General Assembly is clearly designed to advance the goal of collecting taxes by enhancing the remedies available for the prompt and effective enforcement of Ohio's tax collection laws.  (Doc.#45-14, Frangos Decl. ¶ 5-9, PageID#640-642).

In creating this statutory remedy, the General Assembly implemented a number of procedural safeguards to protect the rights of property owners and other interested parties.  First, with respect to service of process, R.C. 323.66(C) provides that "the clerk of court, in the same manner as in civil actions, shall provide summons and notice of hearings, maintain an official

case file, docket all proceedings, and tax as costs all necessary actions in connection therewith in furtherance of the foreclosure of abandoned land" under sections 323.65 to 323.79. *Id.* Moreover, if the property owner wants to contest the foreclosure in a judicial proceeding, they have the right to transfer the case to the court of common pleas by filing a motion "on or before the fourteenth day after service of process is perfected under division (B) of section 323.69 of the Revised Code." *See* R.C. 323.691; R.C. 323.70(B).

Finally, the statutory scheme provides an aggrieved party with the right to file an administrative appeal of a final order of foreclosure with the court of common pleas under Chapters 2505 and 2506 of the Revised Code. *See* R.C. 323.79. In this regard, an administrative appeal under R.C. 323.79 differs from a traditional R.C. 2506 appeal because the appeal under R.C. 323.79 "shall proceed as an appeal de novo and may include issues * * * that are raised for the first time on appeal and that are pertinent to the abandoned land that is the subject of those proceedings." *Id.* Thus, in conjunction with any appeal under R.C. 323.79, an aggrieved party can raise new claims, including constitutional claims under federal and state law.

### B.     The Underlying Tax Foreclosure Action.

It is undisputed that the takings and due process claims alleged in this case arise from an administrative tax foreclosure action filed with the Summit County Board of Revision on January 28, 2019, *Kristen M. Scalise v. TR Construction, Inc.,* Case No. CV-2019-01-0356 (the "Tax Foreclosure Action"). (Doc.#9, Amd. Compl. ¶ 19, PageID#189). The motions, pleadings, orders, and other records from the underlying Tax Foreclosure Action are a matter of public record, and certified copies of the docket and other filings from the Tax Foreclosure Action are being submitted as Exhibits to the Declaration of Raymond Hartsough, which has been filed in Support of this Motion. (*See* Doc.#45-1 through Doc.#45-11, PageID#584-610).

In this regard, Plaintiff's Amended Complaint characterizes the facts relating to the service of the Complaint and Summons in the Tax Foreclosure Action.  (Doc.#9, Compl. ¶ 23-37, PageID#189-190).  As set forth in the Hartsough Declaration and as confirmed by the certified docket and related service documents that were filed in the Tax Foreclosure Action, service of process was effectuated upon TR Construction through <u>both</u> ordinary mail and by publication.  (Doc.#45-1, Hartsough Decl. ¶ 3-9, PageID#584-586); (Doc.#45-8, Certificate of Mailing, PageID#600); (Doc.#45-10 and #45-11, Affidavit of Publication and Proof of Publication, PageID#608-610).  In particular, the docket shows that the Clerk of Courts mailed a copy of the Summons and Complaint in the Tax Foreclosure Action to TR Construction via <u>both</u> Certified Mail and Regular Mail at three addresses:  152 W. Dartmore Ave., Akron, Ohio 44301; 1007 Bank Street, Akron, Ohio 44305; and 720 Mohawk Trail SW, Hartville, Ohio 44612.  (Doc.#45-1, Hartsough Decl. ¶ 3, PageID#584); (Doc.#45-2, Docket, pp. 3-4, 6-7, PageID#589-593); (Doc.#45-3-#45-8, Certified Mail Receipts and Certificates of Mailing, PageID#595-600).

The Summons and Complaint were mailed to 152 W. Dartmore Ave. because, as TR Construction has admitted, this was the tax mailing address for the Property from August 5, 2008, through July 12, 2019. (Doc.#45-13, Pl. Answer to Request for Admission No. 11, PageID#628).  Under Ohio law, it is well-established that it is the property owner's burden to "maintain an up-to-date tax mailing address." *Groveport Madison Local Schools Bd. of Edn. v. Franklin Cty. Bd. of Rev.*, 149 Ohio St.3d 706, 2017-Ohio-1428, 77 N.E.3d 957, ¶ 19.  Here, Joe Riley, the President and Rule 30(b)(6) representative for TR Construction, testified that he did not update the tax mailing address because he thought that the attorneys for the Seller (Slater & Zurz) provided his new mailing address – 1007 Bank Street, Akron, Ohio 44305 – to the Fiscal Office when TR Construction purchased the Property in 2008.  (Doc.#45-12, Riley Dep. pp. 71-

6

72, PageID#618-619). Thus, since TR Construction no longer had any offices at 152 W. Dartmore Avenue, both the certified mail and regular mail envelopes were returned with the designation, "Attempted Unknown."  (Doc.#45-1, Hartsough Decl. ¶ 5, ¶ 9, PageID#585-586).

With respect to the mailing address at 1007 Bank Street, however, Riley admitted that TR Construction maintained a mailbox in the front of the building that was accessible to the U.S. Postal Service, and that he never experienced any problems in receiving U.S. mail at that address. (Doc.#45-12, Riley Dep. pp. 217-218, PageID#621-622). With respect to the certified mail and regular mail envelopes that were mailed to 1007 Bank Street, therefore, there is no evidence that they were not actually mailed and delivered to this address. Rather, the certified docket in the Tax Foreclosure Action shows that the certified mail package sent to 1007 Bank Street was returned, "Unclaimed," which means that U.S. Postal Service left a notice at this mailing address, but the certified mail package was not claimed within 30 days. (Doc.#45-1, Hartsough Decl. ¶ 7, PageID#585); (Doc.#45-5, Certified Mail Receipt, PageID#597).

Indeed, with respect to service by regular mail, the certified docket shows that the regular mail envelope sent to 1007 Bank Street was never returned.  In particular, the certified docket shows that three Certificates of Mailing were filed by the Clerk, including a Certificate of Mailing for 1007 Bank Street that was docketed on February 1, 2019. (Doc.#45-6 through #45-8, Certificates of Mailing, PageID#598-600). Although the first-class mailing sent to 152 W. Dartmore was returned, the other two first-class mailings were *not* returned. (Doc.#45-1, Hartsough Decl. ¶ 9, PageID#584-585); (Doc.#45-2, Certified Copy of Docket, pg. 7, PageID#593); (Doc.#45-6 through #45-8, Certificates of Mailing, PageID#598-600).  Thus, the docket confirms that regular mail service was effectuated upon TR Construction, Inc. at the 1007 Bank Street address.  (*Id.*)

7

Further, the certified docket shows that service also was accomplished via publication.  In particular, the certified docket shows that an Affidavit for Service by Publication was filed on February 4, 2019, and that a Legal Notice was published in the Akron Legal News, a daily newspaper of general circulation in Summit County, for three consecutive weeks beginning on February 12, 2019. (Doc.#45-10, Affidavit for Service by Publication, PageID#608); (Doc.#45-11, Proof of Publication, PageID#609-610).  After service was completed, the Board of Revision then held a hearing and issued an "Adjudication of Foreclosure" that ordered the foreclosure and direct transfer of the Property under R.C. 323.78. (Doc#45-9, Adjudication of Foreclosure, dated June 3, 2019, PageID#601-607). Thereafter, once the 28-day alternative redemption period expired, the Clerk issued an Order to the Sheriff to transfer the Property on July 3, 2019, and the Sheriff's Deed was recorded on July 10, 2019.  (Doc.#45-2, Docket, pg. 6, PageID#592).

## ARGUMENT

I. **THE COURT SHOULD GRANT SUMMARY JUDGMENT IN SUMMIT COUNTY'S FAVOR ON PLAINTIFF'S DUE PROCESS CLAIM.**

### A. **The Service Provided By The Clerk Of Courts In The Tax Foreclosure Action Did Not Violate Constitutional Due Process Requirements.**

Count Two of the Amended Complaint alleges a due process claim based upon the allegation that TR Construction was not properly served with the Summons and Complaint in the Tax Foreclosure Action. (Doc. #9, Amd. Compl. ¶ 59-63, PageID#193-194). Although the Amended Complaint points to the fact that the certified mail packages for TR Construction were all returned to the Clerk's Office, this argument ignores the fact that the Clerk also mailed the Summons and Complaint to 1007 Bank Street by ordinary mail, and this envelope was <u>not</u> returned.  While Riley now denies receiving the Summons, his denial is immaterial because it is well established that due process does not require actual notice, but merely requires notice that is "reasonably calculated, under all circumstances, to apprise interested parties of the pendency of

8

the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950). Accordingly, even though the certified mail package was returned as "unclaimed," ordinary mail service was properly effectuated under Civ.R. 4.6(D) because "the fact of mailing was entered into the record, and the ordinary mail envelope was not returned" to the Clerk. *See Shankle v. Egner*, 5th Dist. Stark Nos. 2011 CA 00121, 2011 CA 00143, 2012-Ohio-2027, ¶ 29, quoting *Bowers v. Craven*, 9th Dist. Summit No. 24422, 2009-Ohio-2222, ¶ 19.

This is a critical point because the courts have consistently held that service by ordinary mail under Civ.R. 4.6(D) is a "constitutionally valid method of service." *Hitachi Medical Systems America, Inc. v. Philbrick*, No. 5:09CV1187, 2011 WL 841183, *1 (N.D. Ohio Mar. 7, 2011) (citations omitted). Indeed, while the Supreme Court has held that "the state must take additional reasonable steps to attempt to provide notice to the property owner" if a certified mail package is returned unclaimed, *Jones v. Flowers*, 547 U.S. 220, 235, 126 S.Ct. 1708 (2006), it did not suggest in *Jones* that service by ordinary mail was unconstitutional, particularly where, as here, the first-class mail envelope was sent to a valid mailing address and was <u>not</u> returned. *Id.* Thus, it is well established that service by ordinary mail is sufficient to satisfy constitutional due process requirements unless the regular mail envelope is returned, or the government has actual knowledge that the intended recipient resides at a different address. *See Snider Intern. Corp. v. Town of Forest Heights, Md.*, 739 F.3d 140, 148 (4th Cir. 2014) ("notice via first-class mail comports with due process"); *Akey v. Clinton Cty.*, 375 F.3d 231, 235 (2d Cir. 2004) ("As notice by mail is deemed reasonably calculated to reach property owners, the state is not required to go further, despite the slight risk that notice sent by ordinary mail might not be received"); *DiPiero v. City of Macedonia*, 180 F.3d 770, 788 (6th Cir. 1999) ("Under most circumstances, notice sent

9

by ordinary mail is sufficient to discharge the government's due process obligations") (quoting *Armendariz-Matta v. U.S. Dept. of Justice*, 82 F.3d 679, 683 (5th Cir. 1996)); *United States ex rel. Arnold v. Alphatec Spine, Inc.*, No. 1:13-cv-586, 2016 WL 11800669, *2 (S.D. Ohio May 6, 2016) ("service by ordinary mail will not run afoul of constitutional due process requirements"); *In re Foreclosure of Liens for Delinquent Taxes*, 62 Ohio St.2d 333, 336, 405 N.E.2d 1030 (1980) (notification "by ordinary mail to the record addresses" comport with due process).

In this regard, it must be emphasized that the ordinary mail service in the Tax Foreclosure Action was further buttressed by service by publication. While the Supreme Court in *Jones* held that the last-minute, post-judgment publication of a tax sale is not sufficient, standing alone, to comply with due process, there was no evidence in *Jones* that the government ever attempted to effectuate service by ordinary mail. Indeed, given that TR Construction failed to provide the Fiscal Office with the correct tax mailing address as required by Ohio law, it was entirely reasonable under the circumstances for the County Prosecutor to request both ordinary mail service <u>and</u> service by publication in this case. Civ.R. 4.4, in fact, authorizes service by publication when the defendant's mailing address is unknown, and as one district judge recently ruled, service by publication "likely complies with the constitutional minimum due process requirements when applied to Ohio residents." *See NOCO Company v. Shelton*, No. 1:19-cv-2553, 2021 WL 4699215, *3 (N.D. Ohio Jan. 8, 2021). Thus, given that service in this case was accomplished by both ordinary mail <u>and</u> by publication, it is clear that the constitutional due process requirements were satisfied.

The fact that the Summit County Clerk of Courts mailed the regular mail envelope to 1007 Bank Street before the certified mail package was returned does not change this result. As the Fourth Circuit explained in *Snider Intern. Corp.*, the Supreme Court's ruling in *Jones* should

10

not be read "as permitting the use of first-class mail only in conjunction with publication after certified mail has proved unfruitful." *Id.*, 739 F.3d at 148. Rather, the "[c]ourts have upheld the sufficiency of dual mailing schemes involving the contemporaneous use of first-class and certified mails to send identical notice, even where the certified notices are returned unclaimed." *Id.* (citations omitted). Accordingly, given that the first-class mailing to 1007 Bank Street was not returned to the Clerk, the Court should conclude that this ordinary mail service was sufficient to satisfy the constitutional due process requirements. *Id.* at 148 ("Without an indication that the first-class mailing attempt could not notify the intended recipient, it is difficult to see how first-class mail, on its own, is insufficient") (citing *Jones*, 547 U.S. at 234).

**B.      TR Construction's Due Process Claim Is Barred By Res Judicata.**

Summit County also is entitled to summary judgment on TR Construction's due process claim because this claim could and should have been raised in the underlying tax foreclosure proceedings or via a timely appeal filed in the Summit County Court of Common Pleas under R.C. 323.79. As the Sixth Circuit has held, it is well-established that the federal courts must give state-court judgments the "same preclusive effect" that it would receive in state court under "traditional principles of res judicata." *Moore v. Hiram Twp. Ohio*, 988 F.3d 353, 357 (6th Cir. 2021). Thus, it is well established that the federal courts must follow Ohio law in deciding whether a claim is barred by Ohio's doctrine of res judicata. *Id.*; *Talismanic Properties LLC v. Tipp City Ohio*, 742 F. App'x 129, 131-132 (6th Cir. 2018); *Goodwin v. Summit Cty.*, 703 F. App'x 379, 381, 385-386 (6th Cir. 2017); *Lisboa v. Cleveland Heights*, 576 F. App'x 474, 475–476 (6th Cir. 2014); *Carroll v. Cleveland*, 522 F. App'x 299, 303-307 (6th Cir. 2013).

In this regard, the Ohio Supreme Court has repeatedly held that the doctrine of res judicata applies not only to state court judgments, but to final <u>administrative</u> <u>orders</u> that are

11

subject to judicial review. *State ex rel. Casale v. McLean*, 58 Ohio St.3d 163, 165, 569 N.E.2d 475 (1991) (citing *State ex rel. Henderson v. Maple Hts. Civil Service Comm.*, 63 Ohio St.2d 39, 406 N.E.2d 1105 (1980), and *State ex rel. Bingham v. Riley*, 6 Ohio St.2d 263, 217 N.E.2d 874 (1966)).  Thus, consistent with this binding precedent, the Sixth Circuit has held that res judicata applies to final administrative decisions that are not appealed to the state courts in conjunction with a timely administrative appeal. *Carroll*, 522 F. App'x at 303-304 (citing *Wade v. Cleveland*, 8 Ohio App.3d 176, 456 N.E.2d 829, 831-32 (8th Dist. 1982)).

In this regard, the Sixth Circuit's holding in *Carroll* is directly relevant because it involved the application of res judicata to due process and takings claims that arose from a final administrative action that was not appealed to the state courts under R.C. Chapter 2506.  *Id.* at 305-306.  While the plaintiffs argued that res judicata did not apply because they could not recover damages via an administrative appeal, the Sixth Circuit ultimately rejected this argument as a matter of law because, upon review of Ohio law, it concluded that an aggrieved party would have the ability to prosecute Section 1983 claims in conjunction with a timely administrative appeal.  *Id.*  Accordingly, under *Carroll*, the doctrine of res judicata fully applies to any constitutional claims that "could" have been presented to the common pleas court in conjunction with a timely administrative appeal. *Id.* at 305-307.

The same reasoning applies equally to this case.  Here, as previously discussed, R.C. 323.79 expressly provides an aggrieved party with the right to file an administrative appeal with the court of common pleas under R.C. Chapter 2506.  Indeed, under the plain language of R.C. 323.79, the appeal is actually broader than an appeal under R.C. Chapter 2506 because R.C. 323.79 provides that the appeal "shall proceed as an appeal de novo and may include issues raised or adjudicated in the proceedings before the county board of revision, as well as other

12

issues that are raised for the first time on appeal and that are pertinent to the abandoned land that is the subject of those proceedings." *Id.* Thus, it is clear that TR Construction could have raised its due process claims in state court in conjunction with an appeal filed under R.C. 323.79.

This is fatal to TR Construction's due process claim because, like the plaintiff in *Carroll*, TR Construction did not file an appeal under R.C. 323.79. (Doc.#45-13, Pl. Answer to Req. for Admission No. 27, PageID#633). While the Sixth Circuit's ruling in *Carroll* is an unpublished opinion, it has been consistently followed by the district courts,[1] and most recently was adopted and followed by the Sixth Circuit in a published opinion, *Moore v. Hiram Twp.*, 988 F.3d 353, 363-364 (6th Cir. 2021), which agreed that "plaintiffs may bring claims for money damages alongside their administrative appeal in a state-court action" under Ohio law. *Id.* at 364. Thus, even though Moore actually raised procedural due process issues in her R.C. 2506 appeal, the Sixth Circuit ultimately concluded that it did not matter whether she did or not because "even if Moore's claims were not actually litigated in the underlying action, they could have been." *Id.*, 988 F.3d at 361. Accordingly, the Sixth Circuit held that res judicata applied to all of Moore's Section 1983 claims, regardless of whether they were actually raised or litigated in state court.

In this regard, we note that the Sixth Circuit recently held in *Harrison v. Montgomery County*, 997 F.3d 643 (6th Cir. 2021), that res judicata did not bar a delinquent taxpayer from bringing a federal law takings claim that arose from an administrative tax foreclosure

---

[1] *Moore v. Hiram Twp.*, 2020 WL 511264, *8 (N.D. Ohio 2020); *Card v. Cleveland*, 2019 WL 4600434, *4 (N.D. Ohio 2019); *Wylie-Brown v. O'Leary*, 2018 WL 3135942, *3 (N.D. Ohio 2018); *Lifter v. Cleveland State Univ.*, 202 F. Supp.3d 779, 786 (N.D. Ohio 2016); *Goodwin v. County of Summit*, 2016 WL 518310, *6 (N.D. Ohio 2016); *Trask v. McCarthy*, 2016 WL 4449640, *2 (S.D. Ohio 2016); *Bear v. Delaware Cty.*, 2014 WL 6808981, *3 (S.D. Ohio 2014); *Freeman v. Shaker Hts. City Schools*, 2014 WL 4064330, *3 (N.D. Ohio 2014); *Ondo v. Cleveland*, 2013 WL 6089475, *6 (N.D. Ohio 2013); *Foor v. Cleveland*, 2013 WL 4427432, *1 (N.D. Ohio 2013).

proceeding.  This ruling, however, was based upon the fact that Harrison's alleged takings claim arose before the Supreme Court's decision in *Knick v. Twp. of Scott*, --- U.S. ----, 139 S. Ct. 2162, 2168, 204 L.Ed.2d 558 (2019), and thus its holding only applies to takings claims, not due process claims.  Indeed, there was no due process claim alleged in *Harrison*, and thus the panel in *Harrison* did not follow *Carroll* only because it "came down before *Knick* eliminated the state-exhaustion requirement for <u>takings</u> claims."  *Harrison*, 997 F.3d at 651 (emphasis added). Thus, the holding in *Harrison* clearly does not apply to TR Construction's due process claim.

### C.     The Court Lacks The Jurisdiction Over TR Construction's Due Process Claim Under The Tax Injunction Act And Related Doctrine Of Comity.

TR Construction's due process claim also cannot be heard by this Court because, if decided in the Plaintiff's favor, it could potentially invalidate the underlying judgment entered by the Board of Revision in the Tax Foreclosure Action.  Ordinarily, if a judgment is entered without proper service of process upon the defendant, it "is a nullity and void."  *See Cincinnati Sch. Dist. Bd. of Edn. v. Hamilton Cty. Bd. of Revision*, 87 Ohio St. 3d 363, 367, 721 N.E.2d 40 (2000).  Under Ohio law, however, any due process challenge to the validity of the Board's final decision must have been raised before the statutory appeal time expired.  *Id.*  Moreover, this Court would lack the jurisdiction to invalidate the Board's tax foreclosure order under the Tax Injunction Act and related doctrine of comity, which bars the federal courts from hearing due process claims that seek to challenge the validity of a tax foreclosure decision. *See, e.g., Dixon v. Oisten*, 62 F. App'x 105 (6th Cir. 2003) (holding the TIA and comity barred a claim where the plaintiff claimed the tax foreclosure was without due process); *Johnson v. Mich. Dep't of Treasury*, 211 F.3d 1269 (Table), 2000 WL 571916, at *2 (6th Cir. May 4, 2000) (holding the TIA and comity barred Plaintiff's claim that he was denied due process because he did not receive notice of the tax foreclosure on his home); *Johnson v. Sawyer*, No. 1:15 CV 0730, 2015

14

WL 4743815, at *5 (N.D. Ohio Aug. 11, 2015), *aff'd*, Case No. 15-3972, slip opinion (6th Cir. Apr. 6, 2016) (copy attached as Doc. #45-15) (applying TIA and comity to bar constitutional claims that could have been filed in state court via a timely appeal under R.C. 323.79).

In this regard, we note that the Sixth Circuit recently held in *Harrison* that the TIA and comity did not apply to the type of federal law takings claims alleged in this case. *Id.*, 997 F.3d at 651-652. In reaching this conclusion, however, the Sixth Circuit was clear that Harrison's takings claim did not "seek to halt foreclosures of tax-delinquent property or even to get her home back." *Id.* at 651. Thus, the Sixth Circuit held that the TIA and comity did not apply to Harrison's takings claim because she did not challenge the Montgomery County Board of Revision's "foreclosure of tax-delinquent property." *Id.* at 652.

For this reason, the Sixth Circuit's holdings in both *Harrison* and *Freed v. Thomas*, 976 F.3d 729, 734 (6th Cir. 2020), are applicable only to TR Construction's takings claim, and not the due process claim. *See Hometown Village of Marion Assn. v. Marion Twp.*, 547 F. Supp. 3d 672, 679-681 (E.D. Mich. July 1, 2021) (citing *Johnson v. Michigan Dep't of Treasury*, 211 F.3d 1269 (Table), 2000 WL 571916, at *2 (6th Cir. May 4, 2000) (distinguishing *Harrison* and *Freed*). Indeed, while the decision in *Hometown Village* was based upon the remedies available under Michigan law, it is undisputed that Ohio law also provides a "plain, speedy, and efficient remedy" for any alleged due process violation through the administrative appeal process set forth in R.C. 323.79. (*See* Doc. #45-15, *Johnson v. Sawyer*, slip op. at 2-3, PageID#645-646) (citing *Northwest Airlines, Inc. v. Tenn. State Bd. of Equalization*, 11 F.3d 70, 72 (6th Cir. 1993) ("State procedures that call for an appeal to state court from an administrative decision" are sufficient to satisfy the TIA)). Thus, for this additional reason, TR Construction's due process claim should be dismissed, and summary judgment granted in Summit County's favor as a matter of law.

15

## II.     THE COURT SHOULD GRANT SUMMARY JUDGMENT IN SUMMIT COUNTY'S FAVOR ON PLAINTIFF'S FEDERAL TAKINGS CLAIM.

Summit County also is entitled to summary judgment on the federal law takings claim alleged in Count One.  As previously discussed, it is undisputed that TR Construction's takings claim is based upon the alleged loss of "title, possession, use, and enjoyment" of the Property that was caused by a final judgment that was entered by the Board of Revision in the Tax Foreclosure Action.  (Doc. #9, Amd. Comp. ¶ 46, PageID#192) ("Because of the proceedings in the TR Foreclosure Case described above, TR has been denied title, possession, use, and enjoyment of the TR Property").

This is fatal to TR Construction's takings claim because, as the U.S. Supreme Court has held, "[t]he government may not be required to compensate an owner for property which it has already lawfully acquired under the exercise of governmental authority other than the power of eminent domain."  *Bennis v. Michigan*, 516 U.S. 442, 452-453, 116 S.Ct. 994, 134 L.Ed.2d 68 (1996).  Here, it is undisputed that TR Construction lost its ownership of the Property <u>as a result of the failure to pay taxes</u>.  Thus, no "takings" claim can arise as a matter of law because the Board of Revision's direct transfer order involved the exercise of the State's taxing powers, not the power of eminent domain.  *Leasor v. Kapszukiewicz*, 6th Dist. Lucas No. L-08-1004, 2008-Ohio-6176, ¶ 14 (affirming dismissal of takings claim arising from tax foreclosure it involved the State's "taxing power, not the eminent domain power of the government") (citing cases).

In this regard, the opinion in *Leasor* is based upon the Supreme Court's ruling in *Bennis* and is supported by numerous federal court opinions. *See Leber v. United States*, 146 Fed. Cl. 9, 12 (Ct. Cl. 2019); *Speed v. Mills*, 919 F. Supp. 2d 122, 129 (D.D.C. 2013); *Epice Corp. v. Land Reutilization Authority of City of St. Louis*, No. 4:07CV00206 HEA, 2010 WL 3270114, *2 (E.D. Mo. Aug. 17, 2012); *Golden v. Mercer Cty. Tax Claim Bureau (In re Golden)*, 190 B.R.

16

52, 57-58 (Bankr. W.D. Penn. 1995). Moreover, it is supported by the Supreme Court's opinion in *Nelson v. City of New York*, 352 U.S. 103 (1956), which rejected takings claims arising that involved the "retention of property, in one instance, and proceeds of sale in the other, far exceeding in value the amounts due." *Id.* at 109. Yet, the Court held that "nothing in the Federal Constitution prevents this where the record shows adequate steps were taken to notify the owners of the charges due and the foreclosure proceedings." *Id.* at 110.

Although TR Construction's takings claim involves a transfer, rather than a sale, this does not change the fact that TR Construction lost its ownership of the Property as a result of its failure to pay taxes. In other words, but for the failure to pay taxes, no foreclosure – and no transfer – would have occurred. This is critical because the Supreme Court "has never required the State to compensate the owner for the consequences of his own neglect." *See Texaco, Inc. v. Short*, 454 U.S. 516, 530 (1982). In *Texaco*, for example, the Court held that the State cannot be held liable to pay compensation for the loss of property where, as here, it results from an owner's failure to comply with certain statutory conditions imposed by state law. *Id.* at 529-530. Similarly, the State of Ohio also cannot be liable for an alleged taking that arises from a person's neglect in failing to comply with state laws governing the payment of taxes. Accordingly, under the circumstances, the State should not be required to compensate a tax delinquent property owner for the consequences of their own "neglect" in failing to pay their taxes.

In its Amended Complaint, TR Construction cited Judge Gwin's unpublished opinions in *Tarrify Properties v. Cuyahoga Cty.*, 1:19-cv-2293, 2021 WL 164217 (N.D. Ohio Jan. 19, 2021), and *Tarrify Properties, LLC v. Cuyahoga Cty.*, No. 1:19-CV-2293, 2020 WL 4043105 (N.D. Ohio July 17, 2020), as upholding the validity of its federal takings claim. In his 2020 Opinion, Judge Gwin held that Tarrify's takings claim should not be dismissed because the Complaint

17

alleged that the Board of Revision was <u>not</u> exercising the State's taxing authority in ordering a direct transfer under R.C. 323.78. *Id.* at *5. This finding, however, did not take into account the source of the Board of Revision's powers under the Ohio Revised Code. As a creature of statute, the Board of Revision only has been granted limited statutory powers to decide tax valuation and tax foreclosure complaints, and it has <u>never</u> been granted any eminent domain powers. *See* R.C. 5715.11; R.C. 323.66. Thus, it is clear that the board of revision acts as the "state's agent" in enforcing the state taxation laws that were adopted by the General Assembly pursuant to its taxing power under Art. II, § 1 of the Ohio Constitution. *Scarborough*, 13 Ohio Dec. at 740.

It is undisputed, in fact, that the operative statute – R.C. 323.78 – is part of the Chapter of the Ohio Revised Code, entitled "<u>Collection</u> of Taxes." *See* R.C. Chapter 323 (emphasis added). Thus, it is clear that the Board of Revision's authority to order the foreclosure and transfer of a tax-delinquent property under R.C. 323.78 is based <u>entirely</u> upon the State's <u>taxing</u> <u>powers</u>, not the power of eminent domain. Accordingly, consistent with *Leasor* and the other cases cited above, this Court should conclude that Summit County is entitled to summary judgment in its favor on the Plaintiff's alleged takings claim.

Finally, we note that the Sixth Circuit's recent decision in *Hall v. Meisner*, 51 F.4th 185 (6th Cir. 2022), does not change the outcome of this Motion. In *Hall*, the Sixth Circuit was merely reviewing the district court's ruling on a motion to dismiss, and was focused exclusively upon whether the plaintiffs had a constitutionally-protected interest in the "equitable title" of a tax-foreclosed property under Michigan's strict foreclosure law. In so doing, the Sixth Circuit did not consider or rule upon the taxing power argument presented in this Motion. Thus, the Sixth Circuit's opinion in *Hall* does not foreclose the County's argument that the Board of Revision's order was based entirely upon the lawful exercise of the State's taxing powers under R.C. Chapter 323.

18

III.    **THE COURT SHOULD GRANT SUMMARY JUDGMENT IN SUMMIT COUNTY'S FAVOR ON PLAINTIFF'S STATE LAW TAKINGS CLAIM.**

In addition to the foregoing legal reasons, Plaintiffs' state law claim in Count Three should be dismissed because the Ohio Supreme Court has held that the proper remedy for the involuntary taking of private property under the Ohio Constitution is a petition for writ of mandamus. *See State ex rel. Cuyahoga Lakefront Land, L.L.C. v. Cleveland*, 148 Ohio St.3d 531, 2016-Ohio-7640, 71 N.E.3d 1016, ¶¶ 12-13. Thus, under Ohio law, there is no private right of action for damages under Article I, Section 19 of the Ohio Constitution because the remedy for any takings claim under the Ohio Constitution is a writ of mandamus, not a claim for damages. *See Cleveland v. Martin*, 8th Dist. Cuyahoga No. 85374, 2005-Ohio-6482, ¶ 22-23 (affirming dismissal of takings claim for damages because the "proper legal remedy" for an alleged taking under the Ohio Constitution is a writ of mandamus, and because no "private right of action for damages exists separate and distinct from a mandamus action").   Accordingly, the state law takings claim for damages alleged in Count Three must be dismissed as a matter of law. *See Harrison v. Montgomery Cty.*, 482 F. Supp. 3d 652, 665 (S.D. Ohio 2020) (dismissing state law takings claim because the proper remedy for an involuntary taking under Article I, Section 19 of the Ohio Constitution is "the filing of a petition for writ of mandamus in state court, not a claim for damages");[2] *Tarrify Properties*, 2020 WL 4043105, at *5-6 (same ruling).

IV.    **SUMMIT COUNTY ALSO IS ENTITLED TO SUMMARY JUDGMENT BECAUSE THE BOARD OF REVISION WAS ACTING AS THE STATE'S AGENT, NOT THE COUNTY'S AGENT, IN ENFORCING THE STATE'S TAX FORECLOSURE LAWS.**

Finally, Summit County is entitled to summary judgment in its favor because, as previously discussed, the Ohio courts have held that county boards of revision act as the "state's

---

[2] We note that the plaintiff in *Harrison* did not appeal the district court's dismissal of the state law takings claim.  Thus, the sole claim on appeal was Harrison's <u>federal</u> takings claim.

agents" in enforcing the state taxation laws adopted by the General Assembly. *Scarborough v. Gibson*, 13 Ohio Dec. 738, 740 (1903), *aff'd*, 69 Ohio St. 578, 70 N.E. 1130 (1904). Thus, Summit County cannot be held liable for the Board of Revision's actions because, like a state court judge, the Board of Revision acts as an agent of the state, not an agent of the county, in adjudicating tax foreclosure proceedings under R.C. 323.78(B).

This argument is applicable to Plaintiff's Section 1983 claims because it is well-established that where, as here, a local official was acting as the state's agent in enforcing state law, their actions cannot be attributed to the local government entity under 42 U.S.C. § 1983. *Cady v. Arenac Co.*, 574 F.3d 334, 345 (6th Cir. 2009); *Pusey v. City of Youngstown*, 11 F.3d 652, 657-658 (6th Cir. 1993); *Leslie v. Lacy*, 91 F. Supp. 2d 1182, 1195 (S.D. Ohio 2000); *Gardner v. St. Clair Co.*, No. 2:16-CV-10198, 2016 WL 894628, *3 (E.D. Mich. Mar. 9, 2016). This rule has been applied to state court judges, clerks of court, and prosecuting attorneys, but it also applies to the board of revision, which acts an agent of the state when it orders the direct transfer of property under Ohio's tax foreclosure laws. Accordingly, for this additional reason, Summit County is entitled to summary judgment in its favor on all claims.

## CONCLUSION

For all of these reasons, therefore, Defendant Summit County respectfully requests that the Court grant summary judgment on its favor on all claims.

Respectfully submitted,

/s/ Stephen W. Funk
Stephen W. Funk (0058506)
Roetzel & Andress, LPA
222 South Main Street
Akron, Ohio 44308
Telephone: (330) 376-2700
E-mail: sfunk@ralaw.com

20

## <u>CERTIFICATE OF COMPLIANCE</u>

Pursuant to Local Rule 7.1, I hereby certify that the foregoing Memorandum complies with the 20-page limitation for dispositive motions in standard track cases.

*/s/  Stephen W. Funk*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 15th day of December, 2022, the foregoing Motion for Summary Judgment was electronically filed, with supporting Memorandum and Exhibits, via the Court's electronic filing system.  Service was accomplished upon Plaintiff's counsel of record via the Court's electronic filing system in accordance with Fed. R. Civ. P. 5(b)(3).

*/s/  Stephen W. Funk*